NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2076
_____

JOLANDO HINTON

v.

PENNSYLVANIA STATE POLICE,
                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-08-cv-00685)
District Judge:  Honorable Gary L. Lancaster
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2012

Before:  SMITH and FISHER, *Circuit Judges*, and STEARNS,[*] *District Judge*.

(Filed:  May 21, 2012)
_____

OPINION OF THE COURT
_____

_____

[*] The Honorable Richard G. Stearns, District Judge for the United States District
Court for the District of Massachusetts, sitting by designation.

FISHER, *Circuit Judge*.

The Pennsylvania State Police ("PSP") appeals from a judgment of the District Court, and a subsequent order denying PSP's motion for judgment as a matter of law, or in the alternative, motion for a new trial. For the reasons set forth below, we will affirm.

I.

Jolando Hinton ("Hinton") was an African-American police trooper who began working for PSP in 1991. On December 6, 2006, in response to concerns expressed by other troopers about Hinton's behavior, Lt. Sheldon Epstein ("Epstein") recommended that Hinton undergo a psychiatric evaluation. This recommendation was submitted to Captain Roger Waters ("Waters"), the commander of the troop to which Hinton was assigned, and forwarded to PSP's psychologist, Dr. Michael Asken ("Asken"). When Waters spoke with Asken about the request, Waters explained that he had transferred Hinton to another location to improve his performance, but the transfer had no positive effect. On December 8, Asken determined that a psychological evaluation was necessary. At that time, Waters considered the possibility of placing Hinton on medically limited duty and confiscating his badge and weapon, but determined that such actions were unnecessary.

On January 3, 2007, Hinton filed a charge of racial discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging racially discriminatory discipline by PSP and retaliatory transfer. When Hinton returned from extended sick

2

leave on January 23, 2007,[1] Waters ordered him to be placed on medically limited duty, which required the confiscation of his badge and service weapon. On February 16, 2007, Dr. Charles Berlin ("Berlin") conducted a psychiatric evaluation of Hinton and determined that he was fit for duty. On February 26, Asken authored a report adopting Berlin's findings and recommending that Hinton be restored to full-time duty "as soon as feasible." It was not until April 9, 2007, however, that Hinton was returned to full-time duty.

On May 28, 2008, Hinton filed suit against PSP in the U.S. District Court for the Western District of Pennsylvania, alleging racial discrimination and retaliation, in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. § 951, *et seq.* On May 14, 2009, Hinton voluntarily withdrew all claims other than his claim for retaliation. The case went to trial, and on February 11, 2011, a jury returned a verdict in favor of Hinton, and awarded damages in the amount of $24,000. The District Court entered judgment in favor of Hinton on February 20, 2011. On March 18, 2011, PSP filed a post-trial motion for judgment as a matter of law, or in the alternative, motion for a new trial, arguing that Hinton had not established a causal link between his protected activity and the adverse employment action. The District Court denied this motion on March 25, 2011. PSP filed a timely notice of appeal.

---

[1] Hinton had been out on extended sick leave since early December 2006.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331 and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over an order denying a motion for judgment as a matter of law, and apply the same standard as the District Court. *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 492 (3d Cir. 2002). "Such a motion should be granted only if, viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993) (citation omitted). "[T]he court may not weigh the evidence, determine the credibility of witnesses, or substitute its version of the facts for the jury's version." *Id.* (citation omitted).

III.

To prevail on a claim of retaliation under Title VII, a plaintiff must establish that: (1) he engaged in a protected activity; (2) the employer took an adverse employment action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006). On appeal, PSP challenges only the sufficiency of the evidence as to the third element, causation. PSP argues that Hinton failed to establish causation because he did not present sufficient evidence that Waters, the individual who

4

authorized the adverse employment actions, knew about the protected activity. We disagree.

To establish a causal connection between protected conduct and an adverse employment action, a plaintiff must, of course, demonstrate that the employer was aware of the protected conduct. *Ambrose*, 303 F.3d at 494. In this case, Hinton presented sufficient evidence to allow a reasonable jury to conclude that Waters was aware that Hinton had filed the EEOC complaint, and that Waters placed him on medically limited duty in response. At trial, Hinton testified as follows regarding a conversation between himself and Sergeant David Penn ("Penn"):

> Q: [H]ow did you know that Captain Waters was aware that your EEOC complaint had been filed?
> A: Oh, Sergeant Penn told me that he knew that the EEOC complaint was filed.
> Q: You assume that Captain Waters told Sergeant Penn?
> A: Yes, sir.
> Q: Okay. And how do you know? And when, when did that happen? How do you know when that happened?
> A: What happened, I returned back to the station. I had a flat tire on my car, and I went in to see Sergeant Penn about getting it taken care of. And when I went in, I asked him, what's really going on with my badge and ID being taken from me? And finally, he said, come on. You filed that complaint with the EEOC. And he said that's why it was being done.
>
> . . .
>
> Q: But you're saying you know for a fact that Captain Waters knew about [the EEOC complaint]?
> A: That's what Sergeant Penn told me.
> Q: Okay. Now, are you sure that Captain—that Sergeant Penn was not talking about some other complaint that you had made about race discrimination?

5

A: No.  He said, you filed that complaint with the EEOC.
Q: With the EEOC?
A: Yes, sir.

PSP argues that this testimony established only that Hinton *assumed* from Penn's statements that Waters was aware of the filing of the EEOC complaint.  We disagree. Viewing this evidence in the light most favorable to Hinton, we hold that a jury could reasonably conclude that Waters was aware that Hinton filed the EEOC complaint.[2]

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court, and the corresponding order denying PSP's motion for judgment as a matter of law, or in the alternative, motion for a new trial.

---

[2] Because we conclude that a jury could find, based on Hinton's testimony, that Waters was aware of the filing of the EEOC complaint, we need not address Hinton's arguments regarding circumstantial evidence of knowledge, specifically, his argument regarding PSP regulations requiring that troop commanders such as Waters must be notified when a discrimination complaint is filed.